# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

JOSHUA L. WRIGHT                                                                          PLAINTIFF

V.                                                                        NO. 3:13-CV-0002-DMB-SAA

CITY OF HORN LAKE, MISSISSIPPI                                                          DEFENDANTS
AND DAVID LINVILLE

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua L. Wright filed this lawsuit against his former employer, the City of Horn Lake, Mississippi, and former supervisor, David Linville, asserting violation of the Uniformed Services Employment and Reemployment Rights Act of 1984 ("USERRA") and various claims under Mississippi law. Plaintiff alleges that Defendants failed and/or refused to promote him while he was on active military leave, terminated him after he returned from military leave, and interfered with his efforts to find future employment. Defendants have moved for summary judgment on grounds that Plaintiff did not qualify for a promotion, was terminated for reasons unrelated to his military service, and failed to provide pre-suit notice for his state law claims. For the reasons below, the Court finds that Defendants' motion for summary judgment should be granted in part and denied in part.

**I**

On August 12, 2002, Plaintiff began working as a firefighter at the City of Horn Lake Fire Department. While employed there, Plaintiff was often called to active duty with the Air National Guard, for which he had served since February 10, 2000. At the times alleged in this lawsuit, Plaintiff was a Fire Lieutenant and Defendant David Linville was the Fire Chief of the Horn Lake Fire Department. According to Plaintiff, Linville often made negative remarks about

the time Plaintiff's military service took away from his job at the fire department. Am. Compl. [20] at 2.

On July 15, 2011, Plaintiff received military orders to report to active duty beginning July 18, 2011, at the Air National Guard Base in Memphis, Tennessee. *See* Doc. [20-1]. Pursuant to those orders, Plaintiff reported to duty.

In or around November 2011, while Plaintiff was on active duty leave, the position of Battalion Chief became available in the Horn Lake Fire Department. One of the prerequisites for the position was passing an out-of-rank test. Plaintiff took the test but did not receive a passing score. Subsequently, he filed a grievance regarding the testing procedure. Doc. [70-9]. Brad Jones, a firefighter hired around the same time as Plaintiff, was ultimately selected as Battalion Chief. *See* Jones Dep. [70-8] at 5. There is a factual dispute between the parties regarding whether, prior to the posting, the City required applicants to pass an out-of-rank test to qualify for a promotion.[1]

On March 31, 2012, Plaintiff completed his military leave with the Air National Guard. By letter dated April 2, 2012, Fire Chief Linville recommended Plaintiff's termination for failing to report to his regularly scheduled shift. Doc. [20-3]. Plaintiff appealed the recommendation, and the Mayor of Horn Lake[2] rescinded Linville's request for termination.[3] Doc. [20-5]. On May 17, 2012, Plaintiff returned to work.

---

[1] Plaintiff argues that passing an out-of-rank test was not previously a requirement to qualify for a promotion, while the City argues that it was. Linville testified by deposition that the out-of-rank test was implemented in 2008 for any employee to be eligible for a promotion within the Horn Lake Fire Department. Doc. [70-5] at 4-5.

[2] Nathan Baker was the Mayor of Horn Lake during the times alleged in this case. All references throughout this opinion to the Mayor of Horn Lake are to Baker, although he has since retired from the position. Doc. [70-10] at 1, 4.

[3] Plaintiff advised that, under the USERRA, he had 90 days to reapply with the fire department after his deployment ended before he could be terminated. Doc. [70-5] at 8-9. *See* 38 U.S.C. § 4312(e)(1)(D). Plaintiff applied for reemployment within that time frame. Doc. [70-5] at 8-9.

From May 17, 2012, to June 1, 2012, Plaintiff received approximately six write-ups for employment violations over the course of the five days he worked during that period. The violations included wearing improper work attire, having a disrespectful attitude to a supervisor, blocking a traffic lane for non-work related activity, disrupting neighbors with loud noise, wearing a gun to the fire station while off-duty, and abandoning his work post. Defs.' Mem. [68] at 5; Doc. [20-6].

By letter dated May 29, 2012, Linville notified Plaintiff that he was recommending his termination for violation of fire department policies. Doc. [20-6]. On June 1, 2012, Plaintiff appealed Linville's recommendation to City Administrator Andrea Freeze. Doc. [20-7]. In an executive session held June 5, 2012, the City's Board of Aldermen voted to uphold Linville's recommendation and terminated Plaintiff.[4] Defs.' Reply [71] at Exh. A.

On January 2, 2013, Plaintiff filed a complaint in this Court alleging that the City terminated him in violation of the USERRA, 38 U.S.C. § 4301. On June 4, 2013, Plaintiff filed an amended complaint wherein he: (1) asserted claims under the USERRA for failure to promote, wrongful termination, and retaliation based on military service;[5] (2) added Linville as a defendant; and (3) asserted state law claims against Linville for malicious interference with employment, malicious interference with future employment, and defamation. Am. Compl. [20]. On June 2, 2014, Defendants filed the instant motion for summary judgment. Mot. [67]. In response, Plaintiff withdrew his state law claims. As for the USERRA claims, Plaintiff argues

---

[4] According to the Mayor of Horn Lake, the Board of Aldermen was responsible for the hiring and termination of all City employees. Doc. [70-10] at 3. Four aldermen voted for termination and two voted against termination. Defs.' Reply [71] at Exh. A; Doc. [70-4] at 25-26; Doc. [70-22] at 8; Doc. [70-24] at 13-14.

[5] From the complaint, it is unclear whether Plaintiff asserts USERRA claims against only the City or both Defendants. However, in his response to Defendants' summary judgment motion, Plaintiff clarifies that his USERRA claims are against Linville and the City. *See* Doc. [69] at 17-22. Defendants attempt to argue that Plaintiff only asserts state law claims against Linville. Defs.' Reply [71] at 1. As Plaintiff has made clear that his USERRA claims are against the City and Linville, the Court disregards Defendants' argument to the contrary.

that summary judgment should be denied. The motion has been fully briefed and is ripe for decision.

II

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be entered when the evidence in a case shows there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether summary judgment is appropriate in a case, a district court must review all well pleaded facts in the light most favorable to the nonmoving party. *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

The party moving for summary judgment must inform "the district court of the basis for its motion, and identify[] those portions of [the record] which it believes demonstrate the absence of a material fact." *Catrett*, 477 U.S. at 323. The nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citations omitted). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations and quotation marks omitted). In the absence of proof, the district court should not assume that the nonmoving party could have proved the necessary facts. *Paz v. Brush Engineered Materials, Inc*., 555 F.3d 383, 391 (5th Cir. 2009). "A complete failure of proof on

an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

**III**

The USERRA serves three purposes: (1) "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service"; (2) to provide "prompt reemployment" of persons returning to civilian jobs from service so as to "minimize the disruption [of their] lives … as well as [to those of] their employers, their fellow employees, and their communities"; and (3) "to prohibit discrimination against persons because of their service" in the military. 38 U.S.C. § 4301; *Rogers v. City of San Antonio*, 392 F.3d 758, 762 (5th Cir. 2004). The term "uniformed services" includes "the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty[.]" 38 U.S.C. § 4303(16).

Consistent with one of it purposes, the USERRA bars discrimination against persons based on their service in the military. *Id.* at § 4311. The anti-discrimination provision of the USERRA, found in 38 U.S.C. § 4311, provides that a service member "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer" based on his or her military service. *Id.* at § 4311(a). Moreover, "an employer must not retaliate against a person by taking adverse employment action against that person because he or she has taken an action to enforce protection under USERRA." *Rogers*, 392 F.3d at 762 (citing 38 U.S.C. § 4311(b)).

"The burden for a plaintiff in a Section 4311 claim is to prove that military status was a motivating factor in the employer's actions." *Bradberry v. Jefferson Cnty.,* 732 F.3d 540, 551

(5th Cir. 2013) (citing 38 U.S.C. § 4311(c)(1)). An employer violates the USERRA if "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in the employer's adverse decision. 38 U.S.C. § 4311(c)(1). However, an employer is not liable under the USERRA if it "can prove that the [adverse] action would have been taken in the absence of such membership, application for membership, service, application of service, or obligation for service[.]" *Id.*

In cases where a supervisor with antimilitary animus is not the final decision-maker, courts must consider whether the supervisor's intent motivated the adverse employment action. *Bradberry*, 732 F.3d at 551. In this regard, the Supreme Court has held that:

> [I]f a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA.

*Staub v. Proctor Hosp.*, _ U.S. _, 131 S. Ct. 1186, 1194 (2011) (footnotes omitted) (emphasis in original). "By referring to a 'motivating factor,' the [USERRA] does not textually suggest that military service be the sole factor." *Bradberry*, 732 F.3d at 545. Instead, "if one reason for the employer's actions was [military service] …, then that reason was a motivating factor." *Id*. at 551.

Defendants argue that Plaintiff's military service was not a motivating factor in his termination and that, even if it had been, the City would have terminated Plaintiff based on his history of workplace violations. Defendants also argue that Plaintiff was not promoted to Battalion Chief because he did not meet the perquisites for the position. In contrast, Plaintiff contends that Defendants refused him a fair opportunity to apply for promotion to Battalion Chief because he was on military duty, and that Defendants manufactured reasons to terminate him after he returned from duty by writing him up for false or frivolous work violations.

6

Plaintiff also asserts that he was not given a fair opportunity to study for the out-of-rank test because the study books could not be taken from the fire station, and that he is far more qualified than the person ultimately promoted to Battalion Chief. According to Plaintiff, the true reason Defendants denied him a promotion and terminated him is discrimination based on his military service.

To prove his USERRA claims of discrimination, retaliation, and failure to promote, Plaintiff primarily relies on statements Linville allegedly made expressing his disapproval of the time Plaintiff spent away from work due to military duties. Plaintiff claims Linville made statements to him such as "here we go with you and your military again," "I am really getting sick of this military stuff," and "you work here full-time." Doc. [70-5] at 2-3. When asked at deposition whether he made negative comments regarding Plaintiff's military absences, Linville stated that any comments he may have made were not meant "in that way." *Id*. at 3. Linville does not deny making such statements, only that he did not intend for the statements to be interpreted negatively.[6] *Id*. at 2-3.

Linville's statements alone may not rise to discriminatory intent; however, only two days after Plaintiff completed his military orders, Linville recommended Plaintiff's termination for

---

[6] At deposition, Linville testified:

> Q. Okay. So is the answer yes or no, you said "here you go with your military again." Yes or no, did you ever tell Josh Wright that?
> A. I didn't say it that way, no.
> Q. How did you say it?
> A. I said, you're at the fire department, not the military. You need to take care of the fire department business today, not the military. I didn't say anything else about that other.
> Q. Second statement is, "I am really getting sick of this military stuff." Did you ever say that or words to that effect?
> A. No, not in that way.
> Q. How did you say it?
> A. The way I just said it a while ago, we are at the fire department, not the military today. Please, take care – and usually I said it that way – please, take care of the fire department today, not the military.

Doc. [70-5] at 2-3.

failure to timely report to work, which recommendation the Mayor rescinded given that Plaintiff had 90 days to reapply. As Plaintiff notes, Linville issued six work violations write-ups to Plaintiff essentially every day of the five-day period Plaintiff worked after returning from military leave. Plaintiff claims such action indicates that Defendants tried to document a reason to terminate him. In response, Defendants contend that Plaintiff received many work violations write-ups throughout his career at the fire department, not just the ones issued after he returned to work in 2012.

While it is true Plaintiff has a history of work violations, the record shows only four violations from 2009 to 2011. *See* Doc. [68] at 3-4. Two of those violations occurred in November 2009 and involved a verbal complaint by a paramedic against Plaintiff and a report of insubordination and/or disrespectful conduct. *Id.* at Exh. A. The other two violations during that period occurred in January 2010 and June 2011 and related to occupying sleep quarters at an inappropriate time and improper swap time. *Id*. Although Defendants contend that Plaintiff was terminated for his entire history of work violations, the record shows that Plaintiff's most recent violations occurred after he returned from military leave in 2012.

Moreover, Plaintiff suggests that Defendants did not consider him to be on active duty because he was not in active combat.[7] Plaintiff offers deposition testimony from a former Horn Lake firefighter who stated that there was a rumor at the fire department during the time of Plaintiff's last military leave that Plaintiff was abusing his military leave and would be fired when he returned from duty. Doc. [70-15] at 8-9, 13. Another fireman and lieutenant who worked with Plaintiff at the fire station, however, were unaware of any such rumor. Doc. [70-3]

---

[7] Plaintiff offers deposition testimony from an alderman-at-large who presided over the hearing on Linville's recommendation for termination. The alderman-at-large testified that the Board discussed Plaintiff's military status during the hearing although it does not appear in the official Board minutes. Doc. [70-23] at 8. Defendants contend that the alderman's testimony should not be considered because the Board only speaks through its minutes. Since summary judgment can be denied without considering such testimony, the Court will not address this issue.

at 19-20; Doc. [70-17] at 10-11.  At deposition, the Mayor of Horn Lake stated that he watched a news television broadcast while Plaintiff was on active military leave and saw Plaintiff working a crime scene in Southaven, Mississippi, and contacted Linville to inquire about why Plaintiff was on television and not deployed to another country or in active combat.  Doc. [70-10] at 8.  Although the Mayor admitted that he did not believe there was any reason for a City employee to work another civilian crime scene, he claims that he had no problem with it once he found out Plaintiff was deployed with the Air National Guard while working in Southaven.  *Id*. at 8, 11.  The Mayor also stated that Linville had complained to him about Plaintiff being disrespectful and wearing a gun to the station while off duty.  *Id*. at 12-13.

Considering Linville's comments and recommendations for disciplinary conduct, it appears that a jury could reasonably find that Plaintiff's military status influenced Defendants' decision to terminate Plaintiff and/or not consider him for the Battalion Chief promotion.  *See Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338, 343 (N.D. Tex. 2004) ("A 'motivating factor' means that the employer, in taking the action against the employee, 'relied upon, took into account, considered or conditioned its decision on [the employee's] military-related [status or obligation].'") (citations omitted).  Although Defendants argue they would have terminated Plaintiff for his history of employment violations, the record does not clearly support this argument.  Plaintiff received approximately ten write-ups during his last four years of employment with the City, and six of those were given in 2012 immediately after he returned from military service.  Plaintiff offers deposition testimony from a former Horn Lake firefighter indicating that there was a rumor in the fire department that Plaintiff would be terminated once he returned from military leave.  And, Linville admitted making arguably discouraging remarks

regarding Plaintiff's military absences. In light of this evidence, it remains unclear whether Defendants would have taken the same action against Plaintiff despite his military status.[8]

Because material fact issues exist regarding whether Plaintiff's military status was a motivating factor in Defendants' adverse employment actions, summary judgment cannot be granted on the USERRA claims at this time. However, as noted above, through withdrawal, Plaintiff conceded his state law claims of malicious interference with employment, malicious interference with future employment, and defamation. Summary judgment is therefore proper as to the state law claims.

## IV

Based on the analysis above, the Court finds that Defendants' motion for summary judgment is granted in part and denied in part. Summary judgment is granted as to the claims for malicious interference with employment, malicious interference with future employment, and defamation. Summary judgment is denied as to the remaining claims under the USERRA.

**SO ORDERED**, this the 21st day of October 2014.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] *See Snowman*, 347 F. Supp. 2d at 342-43 (stating that employer "must prove, by a preponderance of the evidence, that the [adverse] action would have been taken despite [employee's] protected status") (citation omitted); *Mayeaux v. Houston Indep. Sch. Dist.*, 986 F. Supp. 2d 842, 848 (S.D. Tex. 2014) (stating that "in contrast with Title VII cases analyzed under the *McDonnell Douglas* framework in which the burden remains on the plaintiff to show pretext, in USERRA cases 'the burden [is] on the employer to show lack of pretext'") (citation omitted).